## S. P. BROWN, ADMR., v. JOHN NIETHAMMER.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 4, 1891—Decided March 23, 1891.
[To be reported.]

(a) In 1883,* a married woman, upon her death-bed and in the absence of her husband, made a gift to her mother of her furniture then in the possession of the donor's father, at the same time giving certain other chattels to a sister. After her death, her husband was informed of these gifts, by the sister, whereupon he said, "All right; I am satisfied:"

1. In an action brought four years afterward by the surviving husband,

---

* See act of June 3, 1887, P. L. 332.

Statement of Facts.

as administrator of the deceased donor, to recover the value of the furniture, it was not error to charge that if the plaintiff's assent was understandingly given, and the donee was informed of it and acted upon it by taking possession of the furniture, she would have a good title thereto.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 337 January Term 1891, Sup. Ct.; court below, No. 88 May Term 1887, C. P.

On April 27, 1887, there was entered, in the court below, by appeal of the defendant from the judgment of an alderman, an action brought by Samuel P. Brown, administrator of M. Kate Brown, deceased, against John Niethammer, to recover the value of certain goods alleged to belong to the estate of the plaintiff's decedent, and to have been converted by the defendant to his own use.* The defendant pleaded not guilty. Pending the action, the defendant died, and John Barby, his executor, was substituted upon the record as defendant.

At the second trial, on September 24, 1890, the following facts were shown:

The plaintiff's wife, M. Kate Brown, the daughter of the original defendant, John Niethammer, died of consumption at her father's house, on January 18, 1883, intestate and without issue, leaving some personal property consisting of household goods, jewelry, etc. The household goods were on deposit, at the time of her death, in a storage house in Reading, where they had been stored by John Niethammer. The plaintiff was at that time somewhere in the state of New York, employed at an iron furnace. On the day of Mrs. Brown's death, but prior

---

* An action of replevin had been brought against Niethammer by Samuel P. Brown, in his own name and right, he being the surviving husband of M. Kate Brown, who died without issue. A verdict was rendered therein for the plaintiff, subject to the opinion of the court upon a reserved point whether such an action could be maintained by a husband otherwise than in the character of his wife's administrator. The court having entered judgment for the defendant upon the point reserved, non obstante veredicto, the Supreme Court, upon a writ of error to No. 365 January Term 1886, affirmed the judgment: Brown v. Niethammer, 1 Pa. S. C. Dig. 50; 2 Cent. R. 788. The plaintiff then took out letters of administration and commenced the present action.

Statement of Facts.

thereto, he was telegraphed for and answered : " Impossible to come; furnace in a critical condition." When she was dead, another telegram was sent to him and he came the next day.

Miss Nora Fox, a witness for the defendant, testified that she spent nearly all the time with Mrs. Brown, in her room, during the latter part of her last sickness; that, a few days before her death, Mrs. Brown called her mother and took her by the hand, and said: " Mother, you have been so good to me, and I want to repay you, and I want you to send right away for my goods; you shall have them all; I give them to you all; that is the only way I can repay you for the kindness you did, and you have done so much for Samuel "—meaning her husband—" and myself, and it is the only way I can pay you; send for them as soon as you can, so the Browns do not get them, for they have been treating me very badly; " and that she said this several different times in the presence of the witness. The witness then testified to a conversation between the plaintiff and Nellie Neithammer, a sister of Mrs. Brown, occurring shortly after the plaintiff's arrival at the house, on the day subsequent to Mrs. Brown's death, as follows :

" It was in the parlor, quite close to where his wife was lying on the cooling board. They spoke of a ring which she wore, which was her wedding ring, I believe, and they desired the ring should be buried with her. He said that was all right. Miss Nellie said, 'And Sam, Kate has given us her jewelry; she called me and said I should bring the jewelry to the bed; I brought it to her, and she throwed the necklace around my neck, and the rest of the things have been divided between us.' Q. Who had divided them, did she say? A. She divided them herself. Q. Mrs. Brown? A. Yes, sir. Then she said, 'Now, I want mother'—she said mother was to have all the things she had, her furniture and all she had, in payment for what had been done for them. And he said it was all right. Nellie mentioned she had given them to her mother, and he said, ' Well, that is all right.' Q. She mentioned, in the presence of Sam, that is the way she wanted to repay her mother? A. Yes, sir; for the kindness that had been done to them. Q. And Sam said, ' Well, that is all right?' A. Yes; that is the answer he made; 'that is all right.' Q. Did he use any other words, that he was satisfied, that it should be so, or any

Charge of Court below.

words in connection with that? A. Something about being satisfied; that is all I can remember. I took no particular note of it at the time."

Cross-examined: "Q. Give the conversation, as near as you remember; that part of it between Nellie and Mr. Brown about the furniture? A. She mentioned that Katie had given her mother all those things. Q. All what things? A. The furniture and things of that kind, that were stored at Smith's. Q. And what did Mr. Brown say? A. He said, 'That is all right; I am satisfied.' Q. Now, the first time you spoke of that, you said Mr. Brown said, 'That is all right;' then when Mr. Jacobs asked you whether he did not say he was satisfied, you said there was something of that sort said. Now, do you remember exactly what was said? A. As near as I can remember that is really what he said, 'I am satisfied; that is all right.'"

At some time after the death of Mrs. Brown, and after the plaintiff had made demand upon the keeper of the storage-house for the delivery of the goods to him, the goods were delivered to and taken away by John Neithammer, the defendant, by whom they had been stored.

At the close of the testimony, the court, ERMENTROUT, P. J., charged the jury in part as follows:

There is no dispute that, previous to the death of Mrs. Brown, this property was her own personal estate. It belonged to her, for her use, ownership, enjoyment and possession. The jury will therefore start out with that admitted fact, that the property concerning which this dispute arises, was, previous to the death of Mrs. Brown, her property. Being her property, under the act of 1848, relative to the property of married women, she could not, however, dispose of it without the consent of her husband. Although she was the owner, she could not make a gift of it to any one without the consent of her husband. The law expressly forbids a married woman giving title to her personal property unless the consent of her husband is shown. Therefore it is that the first point which the plaintiff presents in this case, to wit:

"1. Under the law, as it existed in 1883 when the decedent died, a married woman could not make a gift of her personal

property without the knowledge or consent of her husband,"
is affirmed.   Whatever may be the law now, since the passage
of another act in 1887, this branch of the case must be tested
as of the time when the alleged right of the defendant was ac-
quired.   And we therefore say to this jury, that under the law,
as it stood at that time, the wife had no power to make a gift
of her property to any one without the consent of her hus-
band. . . . .

If the case stood there, the duty of the jury and the court
would be very plain.   But there is in this case, as presented
by the defendant, an additional feature for the consideration
of the jury.   Whilst, under the law of the land, Mrs. Brown
could not make a gift of her personal property, her furniture,
to any one, and whilst, at the time the gift was made, no con-
sent of the husband was shown or given, yet it is alleged that
subsequently he ratified the act of his wife, gave his assent to
it, and that that conferred a title to this property and made
the gift good in law.

On this branch of the subject, the plaintiff has asked us to
charge :

" 2. The only evidence, offered by the defendant, of the
consent of the husband, was a conversation between Miss
Nellie Niethammer and himself, in which he is stated to have
said, in answer to her statement that his wife had given the
furniture to her mother, ' All right; I am satisfied.'   The
donee was not present, and there is no evidence of the agency
of Miss Niethammer.   It was res inter alios acta, and is not evi-
dence to prove the consent of the husband to the alleged gift
by his wife.   The maxim, per extraneam personam nihil nobis
acquiri potest, applies.[1]

" 3. The evidence shows that, at the time of the death of
the wife, her pretended gift was incomplete and unexecuted.
Failing in the essential requisites of the consent of the hus-
band and delivery of possession, and being incomplete and un-
executed, her death operated in law as a revocation, and her
personal property must go to her administrator, who is the
plaintiff in this case.[2]

" 4. Under all the evidence, the verdict must be for the
plaintiff, and there is nothing for the jury to find, in this case,
excepting the value of the property converted."

### Charge of Court below.

For the purposes of the present case, the second, third and fourth points of the plaintiff are negatived, because there are facts which we propose to leave to the jury.

I have already stated to you, gentlemen, that a gift by a married woman, without the consent of her husband, is of no validity in law, and that, therefore, if that stood alone the defendant acquired no title. So that, even though under the testimony you should find that Mrs. Brown, in her last illness, did say to these people, "I give you this property," they took no title whatever by virtue of that declaration, because the consent of the husband was not at that time given. The consent of the husband was necessary in the case. For, no matter what the wife may attempt to do, if the consent of the husband is not shown, there can be no disposing of her personal property in this case.

Starting out with that, was there, subsequent to this, an assent on the part of the husband to the legality of this gift? If the husband, with the proper knowledge of the facts of the case, being informed of the gift, gave his full consent to what the wife did, then we would say that the consent of the husband, required by the law, was given, and there could be a proper valid gift under such circumstances, if possession of the property were taken.

The principal and the only witness in this cause, on the question of assent of the husband, is Miss Norah Fox. It is her testimony that the jury must fairly, impartially and fully consider, because the assent of the husband must be made clearly to appear. . . . You will pass first upon its credibility; and second, if credible, does she testify clearly and satisfactorily? Does she set forth clear evidence of an assent to the transaction of the wife in her lifetime, with knowledge on the part of the husband as to what the gift was, what it consisted of? If it satisfies you that the consent of the husband was given knowingly, deliberately, and that he intended by the language he used to give his consent,—and his intention is to be gathered from what was said and done by him on that occasion,—then we say to you that, although the consent did not appear in the lifetime of the wife, yet if with full knowledge of the facts he did give his consent subsequent to her death, and if Mrs. Niethammer was informed of that fact, and, acting upon it, took

possession of this property, it would confer title; and if she had title to this property, there would be a defence in this case, and the defendant would be entitled to a verdict.

If her testimony is not believed, or if the testimony is not full and clear on the subject, to such an extent as to show the assent and consent of the husband, with full knowledge of the doings of his wife, there can be no defence to the action, and the plaintiff would be entitled to recover the value of these goods.

—The jury returned a verdict for the defendant. A rule for a new trial having been discharged and judgment entered, the plaintiff took this appeal, specifying that the court erred:

1, 2. In refusing the plaintiff's points.[1] [2]

3. In submitting to the jury the question whether the consent of the husband, expressed to a stranger, was sufficient to complete and perfect the undertaking of the wife to dispose of her personal property.

*Mr. Richmond L. Jones*, for the appellant:

1. The pretended gift of the furniture, etc., in controversy, was not accompanied by a transfer of possession, and therefore did not pass the title. Being unexecuted by delivery, it was revoked by Mrs. Brown's death. A gift of personal property, to be executed by delivery after death, is a bequest, and requires the formalities prescribed for a testament, to make it effectual. But, says the defendant, the attempted gift was perfected by the assent of the husband, given after the wife's death. This is totally inconsistent with the position of the defendant in the former action. Being the sole heir of his wife, the husband, on the authority of Moyer's App., 16 Pa. 405, assumed that he could take her personal estate without administration, and therefore brought replevin for the goods; but this court held that the goods or their value could be recovered only by an administrator. Having, then, no power to take them for himself, the husband clearly could not give them to another, and his want of power to dispose of something he did not possess, is an insurmountable obstacle in the way of the defence set up here.

2. Moreover, the evidence of the husband's consent was wholly inadequate to make out a transfer of the title to prop-

erty. He is alleged to have said, in answer to a narration of
the ineffectual undertaking of his wife to dispose of this furni-
ture, "All right; I am satisfied." This vague and uncertain
response was not made to his wife's donee, but to a stranger.
If any property right reposed in him, the law will not divest
him of it, without clear and explicit evidence of his intention
to part with it. Again; no transfer of possession accompanied
his alleged consent. We have not been able to find any decis-
ion or dictum of this court, to the effect that a man's declara-
tion of his purpose or consent, made to a stranger without
consideration, will effect a transfer of his property to an al-
leged donee; but the court has had occasion to adopt the max-
im of the civil law, per extraneam personam nihil nobis acquiri
potest, holding that an acknowledgment of indebtedness made
to a stranger, will not bar the statute of limitations: Kyle v.
Wells, 17 Pa. 286; and, a fortiori, an acknowledgment to a
stranger should not work a transfer of title.

*Mr. J. H. Jacobs* (with him *Mr. H. P. Keiser*), for the ap-
pellee:

1. The goods were actually in the custody and possession of
the Niethammers at the time of the gift, and therefore no fur-
ther delivery was necessary; nor was any further taking of
possession required to complete the gift. The declaration of
the husband, giving his consent, was not made " to a stranger."
It was made to Nellie Niethammer, in the presence of Miss
Fox. Nellie was a common recipient, with her mother, of
jewelry and other articles given by Mrs. Brown at one and
the same time, and was not only herself a party to the transac-
tion, but was the daughter and more than an agent of Mrs.
Niethammer. She and Miss Fox were witnesses of the very
act of giving, and were present for the very purpose of telling
of it and doing whatever, under the law, they could do to
make it binding. Knowledge of the gift was conveyed to the
plaintiff by one having a deep interest in the subject matter,
and he assented to it. His delay in bringing suit for the goods
was a sufficient affirmance of his intention and meaning, at the
time he said, "All right; I am satisfied." Can it be that he
could revoke his assent after all parties had "settled to their
interests," and the property in question had been used and
destroyed, without even notice from him of a claim to it?

2. There is no evidence that John Niethammer ever took any of these goods into his possession. The furniture was not given to him, and he is in no way connected with the transaction. How, then, can these proceedings stand against his estate? The furniture was given to the mother, and it was really in payment of a debt that the title was transferred to her. There is no doubt that Mrs. Brown owed her mother for care and nursing; and, while the parent might not have been able to collect a claim for it, it cannot be gainsaid that when a debt of this kind is once voluntarily paid, the money cannot be recovered back, although there might have been no legal liability to enforce its payment. And it is immaterial whether payment is made in money or money's worth. These goods were the property of Mrs. Brown. The boarding and nursing were necessaries furnished at her request, and it is immaterial whether they were intended to be charged for by the parents or not. Mrs. Brown having voluntarily given these goods in compensation for them, saying, "This is the only way I can pay you," the husband has no legal, to say nothing of moral right, to recover them.

OPINION, MR. CHIEF JUSTICE PAXSON:

The plaintiff brought this action of trover and conversion before a justice of the peace, to recover the value of a few trifling articles of household furniture which had formerly belonged to his deceased wife. An appeal from the judgment of the justice to the Common Pleas, resulted in a verdict for the defendant. The verdict fully meets the justice of the cause, and unless some error of law appears, the judgment must stand.

While the amount involved is trifling, the case is somewhat unique, and that it may be the better understood I will state the facts briefly. I am obliged to gather them chiefly from the history of the case, the counter-statement, and the arguments of counsel, as the appellant has printed the testimony of only a single witness. They are substantially as follows:

M. Kate Brown was the wife of the plaintiff, and died of consumption in January, 1883. She left no will, and the little personal property she possessed consisted of some trifling trinkets and a few articles of furniture, all of which were the gifts of her own family; no portion of it came from her husband.

Opinion of the Court.

Shortly before she died, and in the extremity of her last sickness, she divided her jewelry between her sister and other members of her family. I do not understand the jewelry to be claimed in this suit, although it is difficult to speak accurately, as the narr is not printed. In any event, it was abandoned upon the argument at bar. The furniture she gave to her mother. The witness, Miss Nora Fox, testified that a few days before Mrs. Brown died she called her mother to her, and said: " Mother, you have been so good to me, and I want to repay you, and I want you to send right away for my goods; you shall have them all; I give them to you all; that is the only way I can repay you for the kindness you did, and you have done so much for Samuel"—meaning her husband—" and myself, and it is the only way I can repay you ; send for them as soon as you can, so the Browns do not get them, for they have been treating me very badly." The furniture referred to was at this time on storage, where it had been placed by Mrs. Brown's father. As it was therefore in the control of the donee's husband, no other delivery of possession was necessary. The plaintiff was in New York when his wife died, and had been for some time previous thereto. He had been recalled by repeated telegrams to see his dying wife, without avail, and when the last urgent message was received his reply was, " Impossible to come ; furnace in a critical condition." He appears to have been employed at some iron establishment as a furnace hand. He came shortly after his wife's death, in time to attend her funeral. Upon the day he returned, a conversation occurred between his wife's sister and himself, in which she informed him of the disposition his wife had made of her jewelry and furniture, to which he replied, " Well, that is all right." The furniture was taken possession of by her father, and over four years thereafter this suit of trover and conversion was commenced to recover its value, and an administration was raised up, apparently for no other purpose than to sustain the action, there being no allegation the decedent owed any one a dollar. It was alleged in the counter-statement, and in the argument at bar, and not denied, that in the meantime the plaintiff had married another woman. While the bearing of this fact upon the law of the case is not apparent, it is interesting as a part of its history.

The plaintiff contended that the gift was incomplete; that, under the act of 1848, and the decisions of this court, she could not dispose of this property without the consent of her husband, the plaintiff; and that his consent, as proved by the witness, was not binding upon him, for the reason that the donee was not present at the conversation. These are the questions presented by the respective assignments of error.

The furniture was the undisputed property of the wife. Moreover, it had been taken into possession under the gift, used, and some of it possibly worn out or scattered. Under the circumstances, the jury would have a right to infer the consent of the husband, and we think the learned judge of the court below was fully justified in saying to them: " If it (the testimony) satisfies you that the consent of the husband was given knowingly, deliberately, and that he intended by the language he used to give his consent,—and his intention is to be gathered from what was said and done by him on that occasion,—then we say to you that, although the consent did not appear in the lifetime of the wife, yet if with full knowledge of the facts he did give his consent subsequent to her death, and if Mrs. Niethammer was informed of that fact, and, acting upon it, took possession of the property, it would confer title; and if she had title to this property, there would be a defence in this case, and the defendant would be entitled to a verdict."

We find no error in this instruction, and the verdict for the defendant naturally followed. It would be difficult to get any jury to find for the plaintiff under the circumstances developed in this case, unless twelve men could be found similarly situated, which is hardly possible in this commonwealth.

Judgment affirmed.